UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | Crim No. 1:24-mj-00019-MAU-2 |
| : | |
| **CEPANE SARTY** : | |
| : | |
| **Defendant.** : | |

## UNITED STATES' OPPOSITION TO DEFENDANT CEPANE SARTY'S MOTION TO AMEND HIS PRETRIAL RELEASE CONDITIONS

Defendant Cepane Sarty—facing a number of federal charges for his participation in the January 6, 2021 attack on the Capitol—asks this Court to modify his conditions of release to allow him to take a half-planned month-long trip to Poland and Greece to visit family. ECF No. 9. The United States opposes this motion because the conditions of release are already the least restrictive combination of conditions, and his travel plans pose a flight risk.

**I.  Factual History**

On January 6, 2021, defendant Cepane Sarty was at the forefront of the mob storming the Capitol.  See ECF No. 1-1 (Statement of Facts). Having traveled from Atlanta, GA to Washington, D.C., Sarty walked to the U.S. Capitol where he and other rioters breached the Capitol grounds and broke into the Capitol Building. He entered the Capitol Building at approximately 2:21 p.m. through the Senate Wing Door, minutes after it had been breached for the first time. Sarty was part of the mob as it overran law enforcement officers in the Crypt. After briefly leaving the Capitol Building, Sarty re-entered the building through the East Rotunda Doors and entered the Rotunda. As law enforcement officials attempted to clear the Rotunda of rioters, Sarty made his way to the front of the line of officers and shoved the officers, temporarily driving the officers back. Police

deployed a chemical riot control agent in the direction of Sarty; directly after the deployment of the chemical riot control agent, Sarty left the Rotunda. At approximately 3:13 p.m., Sarty left the Capitol for the second time. In total, Sarty spent approximately 42 minutes inside the Capitol Building. For his conduct, Sarty was charged by complaint with one felony (a violation of 18 U.S.C. § 111(a)(1)) and six misdemeanors (violations of 18 U.S.C. §§ 1752(a)(1), (2), and (4) and 40 U.S.C. §§ 5104(e)(2)(D), (F), and (G)).

## II. Procedural History

Sarty was arrested on February 5, 2024 in the Northern District of Georgia on a seven-count complaint originating in the District of Columbia. ECF Nos. 1, 5. He was arrested in the Atlanta airport while returning from a two-week long vacation to Costa Rica. At his initial appearance in the Northern District of Georgia, Magistrate Judge Justin S. Anand ordered Sarty released on conditions, including a requirement that the Court approve all travel outside of the Continental United States. *See* ECF No. 7 at 23. At his initial appearance in this District on February 20, 2024, Magistrate Judge Zia M. Faruqui ordered Sarty released subject to the same conditions. ECF No. 13 at 2–3. Trial on all charges has not yet been set.

On or around February 15, 2024, Pretrial Services noted in their Pretrial Services Report that Sarty had "no future travel plans reported." ECF No. 10 at 3. One day later, counsel for Sarty contacted the United States, informed the United States of Sarty's travel plans but did not provide any details, and indicated that Sarty would be seeking permission from this Court to follow through on his travel plans. On February 19, 2024, Sarty filed a motion to modify the conditions of his release. ECF No. 9. Sarty explains that he and his family have a planned trip "to Poland and Greece for vacation and to visit family from June 6 to July 9." *Id.* at ¶ 3. Sarty notes that he and his family "have placed a significant amount of nonrefundable deposits on accommodations" but

acknowledges that he has "not yet purchased airfare." *Id.* Sarty argues that his lack of "recent criminal history," employment, and family connections in the United States support the conclusion that he is not a flight risk. *Id.* at ¶ 4.

### III. Legal Standard

Under the Bail Reform Act, if a judicial officer determines that release under two standard conditions (not committing crimes and cooperating in the collection of DNA) "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," the judicial officer may impose additional conditions. 18 U.S.C. §§ 3142(b), (c)(1). In that event, the judicial officer shall release the defendant "subject to the least restrictive further condition, or combination of conditions" that "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). These conditions may include the condition that the person "abide by specified restrictions on…travel." 18 U.S.C. § 3142(c)(1)(B)(iv). The Court is authorized to impose "any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B)(xiv).

In determining appropriate conditions of release, the judicial officer considers factors including: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g) ("Section 3142(g) factors"). The judicial officer may amend a release order "at any time." 18 U.S.C. § 3142(c)(3).

IV.     **Argument**

Sarty asks this Court to modify his conditions of release to allow him to travel to Poland and Greece for vacation and to visit family for one month, between June 6 and July 9. ECF No. 9. The United States opposes because Sarty is already subject to the "least restrictive" combination of conditions necessary to ensure the safety of the community. 18 U.S.C. § 3142(c)(1)(B). Sarty was not required to post bond, and is not subject to home detention, a curfew, or GPS monitoring; instead, he must submit to supervision by Pretrial Services, cannot possess firearms, must refrain from excessive use of alcohol, and cannot possess controlled substance drugs. ECF No. 7 at 23, ECF 13 at 2–3. Together with these relatively limited conditions, the passport and travel restrictions create the least restrictive combination of conditions required to mitigate the danger that he poses to the community.

Additionally, Sarty's desired month-long trip to visit family in Poland and Greece presents a concerning risk of flight.

> International travel restrictions are imposed due to the simple fact that once the defendant leaves the United States, the District Court, the Pretrial Services Agency, and U.S. law enforcement lose jurisdiction over him. If a defendant in the United States removes his GPS bracelet or travels beyond his permitted boundaries, the Pretrial Services Agency can send its officers, U.S. marshals, or local law-enforcement to search for and detain him. Those options are not available if the defendant takes those actions while traveling in a foreign country.

*United States v. Irizarry*, No. 22-3028, 2022 WL 2284298, at *2 (D.C. Cir. June 24, 2022) (Wilkins, J., dissenting). Applying the 3142(g) factors to this case, this Court should deny Sarty's motion to modify these conditions of release.

    a. <u>Nature and Circumstances of the Offense, and the Weight of the Evidence against Sarty</u>

On January 6, 2021, defendant Sarty was at the forefront of the mob storming the Capitol. See ECF No. 1-1 (Statement of Facts). For his conduct on January 6, Sarty faces one felony assault

count and six misdemeanor charges. Should Sarty be convicted at trial, Sarty faces a maximum of 96 months imprisonment for the felony charge alone.[1]

Sarty's conduct at the Capitol on January 6, 2021 also weighs strongly against allowing him to travel. On January 6, Sarty showed himself to be a violent member of a dangerous mob willing to attack law enforcement officers.

Moreover, the Government believes its evidence against Sarty—which includes surveillance footage, and body worn camera footage—is very strong. Both his entrances into the Capitol Building were captured on CCTV footage, and his assaultive actions were captured on both CCTV footage and body worn camera footage.

In short, the nature of Sarty's crimes—assaulting officers in the course of their efforts to clear the Capitol Building of rioters—is extremely serious, and he faces substantial prison time if convicted. *United States v. Viau*, 2019 WL 3412920, at *2 (D.D.C. July 29, 2019) (denying foreign travel on much lower Guidelines range, where trip was related to charge). Given the possible jail time and strength of the Government's evidence, there is reason to be concerned that Sarty may not return from a month-long trip to foreign countries.

    b. <u>History and Characteristics of the Defendant, and the Nature and Seriousness of the Danger to Any Person or the Community That Would Be Posed by the Defendant's Travel</u>

The defense argues that Sarty's ties to the community, including his employment and family ties, provide personal incentive for him to return to the United States for court appearances. However, Sarty acknowledges that one of the reasons for this trip is to visit family. ECF No. 9 at ¶ 3. As a result, Sarty's family ties cuts both ways: it is just as possible that his family ties in a

---

1 The Government reserves the right to calculate Sarty's Guidelines, including any applicable enhancements, if and when he is convicted.

foreign country will provide him with a place to flee, especially since Sarty intends to travel with his immediate family to that country. *Id.* at ¶ 3.

Furthermore, Sarty's risk of flight poses a danger to the American community, as well as the communities of Poland and Greece. Sarty not only participated in a violent riot, but assaulted police officers during the rioters' final efforts to maintain control of the Capitol Building. It is difficult to conceive of someone who poses a greater threat to the community than someone who would readily assault police officers to stop the peaceful transfer of power between presidential administrations.

    c. <u>Least Restrictive Conditions</u>

Finally, the conditions of Sarty's release are currently the least restrictive conditions available to this court. Sarty acknowledges that this trip is not fully planned – it is not entirely clear how long the trip has been in the planning stages, since his Pre-Trial Services Report, dated February 15, 2024 indicates that he had "no future travel plans." ECF 10 at 3. Sarty cites "a significant amount of nonrefundable deposits on accommodation" but acknowledges that he has not booked any air travel. ECF No. 9 at ¶ 4. As a result, the potential financial harm to Sarty is fully negated – he has not shown that any of the reservations are dependent on his presence in Poland or Greece, and the conditions of release do not prevent Sarty's family from traveling without him to enjoy the nonrefundable accommodations. Furthermore, Sarty was not required to post any bond and is not subject to home detention, a curfew, or GPS monitoring. Requiring Sarty to postpone making or finalizing any plans for foreign pleasure trips until after his trial is one of the least-restrictive requirements that a defendant can be subject to. There is no way to further lessen those restrictions without creating a substantial flight risk.

Courts in this district have been faced with defendants' requests for international travel while awaiting trial on January 6-related charges. In *United States v. Williams*, a defendant on pretrial release for multiple charges, including a "serious felony offense, stemming from his alleged actions on January 6, 2021," moved for permission to travel to Jamaica for a week. *United States v. Williams,* 21-cr-00377-BAH, Minute Order, January 7, 2022. The Court denied the defendant's request for "non-essential foreign travel" noting that the defendant "surrendered his entitlement to unfettered international travel" when he joined the riot on January 6, 2021. *Id.*

In *United States v. Owens*, a defendant on pretrial release for multiple charges, including "serious felony charges of assaulting, resisting, or impeding an officer of the Metropolitan Police Department, and obstruction of law enforcement during a civil disorder," moved for permission to attend a five-night trip to Mexico. *United States v. Owens*, 21-cr-00296, May 23, 2022 Minute Order. Noting the non-essential nature of the travel, the Court denied the defendant's request. *Id.*

In *United States v. Irizarry*, the defendant was charged with misdemeanors stemming from his actions on January 6, 2021. The defendant was an "honors student at The Citadel, a military college in South Carolina, who won a merit-based scholarship to study abroad in Estonia. *United States v. Irizarry*, No. 22-3028, 2022 WL 2284298, at *1 (D.C. Cir. June 24, 2022) (unpublished). Though the government did not oppose the defendant's attendance at this study abroad program, the district court denied the travel. *Id.* The Court of Appeals reversed, holding that the travel was warranted because the district court had not found that the defendant was a flight risk or dangerous, "much less that completely denying his motion for travel was the least restrictive means of reasonably assuring his appearance and the safety of the community." *Id.*

Unlike the defendant in *Irizarry*, the nature of Sarty's desired travel raises individualized concerns regarding the risk of flight and dangerousness. Sarty is charged with a felony, unlike the

defendant in *Irizarry*, who was charged only with misdemeanors. Here, the nature of and seriousness of the danger posed and the flight risk inherent to the month-long trip to visit family justifies the travel restriction. Sarty willingly joined in a violent and destructive attack on the Capitol. If Sarty is to remain on release, a passport and travel restriction is a minimally necessary condition required to ensure the safety of the community and mitigate the risk of non-appearance.

### V.     Conclusion

For the foregoing reasons, Sarty's motion to modify his conditions to permit a one-month trip to Poland and Greece should be denied. This Court should follow the example of Judge Howell in *United States v. Owens* and find that Sarty's unfinalized plan of "international travel . . . will need to wait until he is no longer facing felony charges arising from his ill-advised domestic travel in January 2021." *United States v. Owens*, 21-cr-00296, May 23, 2022 Minute Order.

                                                Respectfully submitted,

                                                MATTHEW M. GRAVES
                                                United States Attorney
                                                D.C. Bar Number 481052

By:    */s/ Carolyn J. Jackson*
         Carolyn J. Jackson
         D.C. Bar No. 1644971
         Assistant United States Attorney
         601 D Street N.W.
         Washington D.C. 20579
         carolyn.jackson@usdoj.gov
         (202) 252-7078